UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEREMY B.,

                                        Plaintiff,

v.                                                          8:20-CV-818
                                                            (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                              OF COUNSEL:

SCHNEIDER & PALCSIK                       MARK A. SCHNEIDER, ESQ.
  *Attorneys for Plaintiff*
57 Court Street
Plattsburgh, New York 12901

U.S. SOCIAL SECURITY ADMIN.               HUGH DUN RAPPAPORT, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff Jeremy B. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI").  (Dkt. No. 1.)  This case has proceeded in accordance

with General Order 18 of this Court which sets forth the procedures to be followed when

appealing a denial of Social Security benefits.  Both parties have filed briefs and Plaintiff replied.

(Dkt. Nos. 16, 19, 20.)  Oral argument was not heard.  Pursuant to 28 U.S.C. § 636(c), the parties

have consented to the disposition of this case by a Magistrate Judge.  (Dkt. Nos. 4, 5.)  For the reasons discussed below, the Commissioner's decision denying Plaintiff's disability benefits is affirmed.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on April 27, 1985.  (Administrative Transcript at 37, 166, 170.[1])  He completed the eighth grade in regular high school classes, and subsequently obtained his GED after a period spent at a juvenile detention facility.  (T. 700, 1091.)  He has a limited employment history, including short periods working as a convenience store clerk, waiter, and telemarketer.  (T. 42-45, 212, 700.)  He reported leaving each of these positions after conflicts with co-workers.  (T. 45, 700.)

Plaintiff reported a history of mental health treatment, including hospitalization and medication, beginning when he was very young.  (T. 700.)  His mental health diagnoses included anxiety and depression, and he reported experiencing panic attacks.  (T. 62-64, 915, 1103.)  At the time of his applications for benefits, Plaintiff had largely discontinued use of psychotropic medication due to perceived side effects but had recently restarted regular psychiatric counseling.  (T. 57-58, 62-64, 700.)

Regarding physical impairments, Plaintiff experienced chronic lower back pain radiating down his left leg for several years.  (T. 45-46, 694.)  The pain grew worse after a November 2016 injury.  (T. 581, 694.)  He also experienced pain and reduced range of motion in his left

---

[1]  The Administrative Transcript is found at Dkt. No. 12.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.  Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

shoulder.  (T. 46-47, 516, 615, 1008.)  Plaintiff typically used a cane to ambulate and reported a

need to change positions frequently between sitting and standing in order to relieve some of the

pain.  (T. 45-47, 696.)  At the time of his hearing, Plaintiff was treating his pain with prescribed

muscle relaxers and over the counter ibuprofen  (T. 57.)  He had previously participated in

physical therapy and received steroid injections, but reported little relief from either approach.

(T. 48.)  Plaintiff was no longer prescribed narcotic pain medication after his physicians grew

concerned about potential abuse or misuse based on inconsistencies in his regular drug tests.  (T.

51, 651, 738, 767-68.)

On April 20, 2017, Plaintiff filed applications for DIB and SSI.  (T. 166-174.)  Both

applications alleged an onset date of April 27, 2015, which was subsequently amended to March

15, 2017.  (T. 166, 294.)  Plaintiff's applications were initially denied on August 10, 2017.  (T.

78-110.)  Thereafter, Plaintiff filed a written request for a hearing, which was held on February

21, 2019, before Administrative Law Judge ("ALJ") Andrew Soltes.  (T. 31-72.)  Plaintiff

testified along with vocational expert ("VE") Cherie Plante.  (T. 31-72.)  On June 12, 2019, the

ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.

(T. 11-29.)  On July 7, 2020, the Appeals Council denied Plaintiff's request for review, making

the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Plaintiff commenced this

action on July 21, 2020.  (Dkt. No. 1.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability benefits must establish he or she

is "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).[2]  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. § 404.1520.  The

Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42 (1987).  Under the five-step sequential evaluation process, the

decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

---

[2]  While the Supplemental Security Income program has special economic eligibility
requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. §
1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are
cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d
Cir. 1983) (citation omitted).

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).  If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence" is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision.  *Rutherford*, 685 F.2d at 62 (2d Cir. 1982).

### C.     Standards for ALJ Evaluation of Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings ("SSR"), including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must

---

[3]  Plaintiff's applications were filed April 20, 2017.  (T. 166-174.)  Thus, the new regulations apply in his case.

consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" forming the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical

opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

### D.     Standards for ALJ Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use the term. SSR 16-3p, 81 FR at 14167. Instead, symptom evaluation tracks the language of the regulations.[4] The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be

---

[4] The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." SSR 16-3p, 81 FR at 14167. The Court will remain consistent with the terms as used by the Commissioner.

accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'"  *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[5]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination.  *Cichocki*, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination.  *Id.; see also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).  "[R]emand is not required where 'the

---

[5] The court in *Barry* also cited SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) which was superseded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.  The 2016 ruling has removed the emphasis on "credibility."

evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

## III.    THE ALJ'S DECISION

In his June 12, 2019, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  (T. 11-29.)  The ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2015, and had not engaged in substantial gainful activity since the amended alleged onset date of March 15, 2015.  (T. 16.)  Plaintiff has the following severe impairments: "mild disc desiccation and broad based central disc protrusion, posterior annular tear with bilateral facet joint ligamentum flavum hypertrophy, degenerative disc disease, spondylosis with radiculopathy, hydrocele (scrotum), anxiety disorder, mood disorder (depressive disorder vs. bipolar disorder), substance use disorder, and posttraumatic stress disorder."  (T. 16-17.)  He does not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (T. 17.)

The ALJ next found, based on the above-stated impairments, Plaintiff has the residual functional capacity ("RFC") to perform "sedentary work" with certain limitations, stating:

> he requires the ability to alternate between sitting and standing at will while continuing to remain on task, can frequently reach, can occasionally stoop, crouch, operate foot controls, and climb ramps/stairs, cannot kneel, crawl, climb ladders/ropes/scaffolds, work from unprotected heights, or use a motor vehicle for work purposes, and is limited to performing unskilled work that is low stress (specifically defined in this case as a job involving simple, routine tasks, basic work-related decisions, rare changes in the workplace setting, occasional, superficial interaction with the public, occasional interaction with co-workers, and frequent interaction with supervisors).

(T. 17-21.)

Next, the ALJ found Plaintiff has no past relevant work.  (T. 22-23.)  Based upon the

RFC and the VE testimony, the ALJ determined Plaintiff is capable of performing other jobs

existing in significant numbers in the national economy.  (T. 23-24.)  Thus, the ALJ determined

Plaintiff has not been under a disability, as defined in the Social Security Act, from March 15,

2015, through the date of the ALJ's decision.  (T. 24.)

## IV.     THE PARTIES' CONTENTIONS

Plaintiff contends the RFC is not supported by substantial evidence because the ALJ: (1)

fails to properly evaluate the medical opinion evidence; (2) fails to properly account for

Plaintiff's physical and mental functional limitations in his RFC determination; and (3) fails to

properly consider Plaintiff's testimony about his pain.  (Dkt. No. 16 at 20-42; Dkt. No. 20.)  In

response, the Commissioner contends the ALJ's decision applies the correct legal standards and

is supported by substantial evidence.  (Dkt. No. 19 at 5-26.)

## V.      THE COURT'S ANALYSIS

### A.     Substantial Evidence Supports the ALJ's Analysis of the Record Evidence and Plaintiff's RFC.

A claimant's RFC is the most he or she can do despite his or her limitations.  20 C.F.R. §

404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained

work activities in an ordinary work setting on a regular and continuing basis.  A regular and

continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."

*Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d

45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must

consider a claimant's physical abilities, mental abilities, symptomology, including pain and other

limitations which could interfere with work activities on a regular and continuing basis."  *Id.*

(citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

It is the province of the ALJ to resolve genuine conflicts in the record.  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  However, the Commissioner need not "reconcile explicitly every shred of medical testimony."  *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved conflicts between the various medical opinions and credited those portions of the medical opinions deemed most consistent with and supported by Plaintiff's overall treatment records and activities and made an RFC finding consistent with the overall record.  *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding consistent with the record as a whole).  In light of the ALJ's detailed analysis of Plaintiff's medical history, the relevant medical opinions, Plaintiff's testimony, and his activities of daily living, this Court concludes the RFC determination was supported by substantial evidence, as summarized below.

1. **The ALJ's RFC Properly Considered Plaintiff's Physical Impairments.**

Plaintiff contends the ALJ failed to properly consider the functional limitations imposed by the pain associated with his physical impairments.  (Dkt. No. 16 at 35-39.)  However, the

ALJ's decision includes a thorough analysis of his physical impairments, including a discussion of Plaintiff's medical records, the available medical opinions, and Plaintiff's testimony.  (T. 17-22.)  Therefore, this Court concludes the ALJ's evaluation of Plaintiff's physical impairments is supported by substantial evidence.

In reaching an RFC determination related to Plaintiff's physical impairments, the ALJ considered the opinion of Plaintiff's primary care physician, Dr. Stephen Hausrath, as well as the opinions of consultative examiner Dr. Nader Wassef and non-examining state agency consultant Dr. A. Holmberg.  (T. 19-20.)

On February 19, 2019, Dr. Hausrath completed a form entitled "Medical Opinion re Ability to Do Work-Related Activities (Physical)."  (T. 1041-1043.)  Based on the medical records, Dr. Hausrath had been treating Plaintiff since June 6, 2018, and had examined him at least four times prior to the date of his opinion.  (T. 901, 906, 908, 911.)  Utilizing the check-box form with some added narrative, Dr. Hausrath opined Plaintiff could lift or carry no more than ten pounds; could stand and walk for a total of less than two hours during an eight hour workday; had no limitations with regard to sitting but would need to lie down for about two hours during the workday in order to relieve pain, and required the ability to shift from sitting to standing or walking at will over the course of the workday.  (T. 1041.)  In his opinion, Plaintiff could never stoop, crouch, or climb ladders, and could only occasionally climb stairs.  (T. 1042.)  He also opined Plaintiff's gross manipulation skills and ability to push or pull were negatively affected by his impairments but had no impact on Plaintiff's ability to reach in all directions or perform fine manipulation with his fingers.  (T. 1042.)  Dr. Hausrath cited Plaintiff's September 25, 2018, MRI results showing chronic facet arthritis and disc disorders resulting in nerve root impingement at the L5 vertebrae as supporting his opinion, and noted "some impairments are

physical, largely related to his lower spine disorders, other are more somatoform, related to a spectrum of emotional/psychiatric disorders." (T. 1041-42.)

On July 27, 2017, Dr. Nader Wassef performed a consultative physical examination of Plaintiff. (T. 694-98.) Prior to the examination, Plaintiff reported back pain radiating down his left leg, along with joint pain in the ankles, hips, knees, shoulders, and right hand. (T. 694-95.) After noticing Plaintiff appeared in great pain, Dr. Wassef offered to postpone the examination so Plaintiff could see his primary care provider, but Plaintiff declined. (T. 694.)

During the examination, Plaintiff walked with a limp, particularly when not using his cane. (T. 696.) He was unable to walk on heels and toes. (T. 696.) He was able to get on and off the examination table and rise from a chair without difficulty. (T. 696.) His cervical and lumbar spines showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (T. 697.) He likewise demonstrated full range of motion in his shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally. (T. 697.) Dr. Wassef observed full strength in the upper and lower extremities, intact hand and finger dexterity, and full grip strength in both hands. (T. 697.)

Based on his examination, Dr. Wassef opined Plaintiff has "moderate" limitations in regard to standing, walking, climbing and descending stairs, bending, squatting, lifting, sitting, operating foot controls, pushing, pulling, and handling.[6] (T. 698.) In his opinion, Plaintiff's cane is medically necessary for both balance and pain relief. (T. 696.)

On August 7, 2017, Dr. A. Holmberg reviewed Plaintiff's then-current medical records

---

[6] An ALJ may rely on a potentially vague description of "moderate" limitations to support a sedentary RFC where, as here, it is supported by clinical findings regarding the extent of Plaintiff's functional limitations. *See Patricia M. v. Berryhill,* No. 18-CV-133 (CFH), 2019 WL 634312, at *10 (N.D.N.Y. Feb. 14, 2019) (collecting cases).

and prepared a Physical RFC Assessment.  (T. 85-87.)  Dr. Holmberg opined Plaintiff could

occasionally lift ten pounds, and could frequently lift lesser weights.  (T. 85.)  He further opined

Plaintiff was limited to a total of two hours total of standing or walking during the workday, but

could sit for about six hours.  (T. 85.)  In Dr. Holmberg's opinion, Plaintiff has no limitations in

his ability to push or pull, but is limited to occasional climbing ramps, stairs, or ladders, as well

as occasional balancing, stooping, kneeling, crouching, and crawling.  (T. 86.)

Upon consideration of all the opinion evidence related to Plaintiff's physical functional

limitations, the ALJ found Dr. Hausrath's opinion unpersuasive, describing the treating

physician's conclusions as "universally contradicted" by the other medical opinion evidence and

clinical findings, including Dr. Hausrath's own treatment notes.  (T. 19.)  The ALJ found the

opinions of consulting physicians Dr. Wassef and Dr. Holmberg to be more persuasive, and

largely adopted their findings into his RFC determination.  (T. 20-22.)  The ALJ described the

two consulting opinions as "mutually supportive and consistent with the foregoing clinical,

objective, and treatment evidence" and branded Dr. Hausrath's opinion as an "outlier

assessment."  (T. 22.)  The ALJ noted there was evidence potentially contradicting Dr. Wassef's

conclusion Plaintiff's cane is medically necessary but deferred to the more restrictive finding.

(T. 20.)  The ALJ similarly noted that his ultimate RFC determination included greater exertional

and postural restrictions than Dr. Holmberg's opinion.  (T. 22.)

Plaintiff contends the ALJ's reliance on the consulting physician opinions failed to show

appropriate deference to Dr. Hausrath's treating source opinion.  (Dkt. No. 16 at 20-27.)

Although the treating physician rule found in prior regulations is inapplicable to this case, a

recent survey of district court cases in the Second Circuit applying the amended regulations

recognized many of the factors to be considered in weighing the various medical opinions in a

given claimant's medical history are substantially similar. *Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502 (AJN)(KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (collecting cases). For example, "[e]ven though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *9 (N.D.N.Y. Feb. 22, 2021) (quoting *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)). As the amended regulations note, "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v).

In this case, the ALJ's decision demonstrates an appreciation of the treating physician relationship consistent with the amended regulations. (T. 19-21.) It includes both a discussion of Dr. Hausrath's opinion and his treatment notes, along with Plaintiff's overall treatment history. The ALJ did not apply his lay expertise to these treatment notes. Rather, he looked for consistency between the various treatment notes and the medical opinions in the record.

In doing so, the ALJ found the longitudinal medical record often showed inconsistent symptoms associated with Plaintiff's established physical impairments. (T. 19-20.) Although Plaintiff traces chronic back pain back to the alleged onset date of March 2015, the impairment appears to have been exacerbated, at least temporarily, after Plaintiff was injured during horseplay or wrestling with a sibling in November 2016. (T. 20, 581, 695). Physician-reviewed imaging reports from December 2016 describe "mild to moderate degenerative lumbar

spondylosis" and a "small left-sided paracentral disc herniation at the L4-L5 level" potentially compromising the left L5 nerve root. (T. 581, 618.) Follow-up x-rays of the lumbar spine in January 2017 and a September 2018 MRI report showed no notable changes. (T. 622, 734, 747.) X-rays of Plaintiff's left shoulder were performed in March 2017 after Plaintiff complained of continuing pain in this area, but were deemed unremarkable by an orthopedic specialist. (T. 718.)

      While these imaging reports are objective evidence of a physical impairment of the lower back, the various physicians who reviewed this data came to varied conclusions regarding the scope of Plaintiff's functional limitations and the appropriate treatment. Dr. Holmberg reviewed Plaintiff's imaging results through August 2017, and concluded Plaintiff could satisfy the exertional and postural requirements of sedentary work, including two hours of standing or walking and six hours of sitting. (T. 79-87.) Dr. A. Michael Imobersteg, an orthopedic specialist who examined Plaintiff in March 2017 concluded Plaintiff's impairments did not warrant surgery and could be adequately addressed by chiropractic treatment and trigger point injections. (T. 718.) In contrast, Dr. Hausrath cited the September 2018 imaging results (which were largely unchanged from the 2017 imaging results) as support for his opinion Plaintiff would need to lie down for extended periods during the workday and could never stoop, crouch, or climb ladders. (T. 1042.)

      The ALJ was confronted with other inconsistencies in Plaintiff's medical record. At times, Plaintiff presented with decreased range of motion of the lumbar spine and difficulty walking without a cane. (T. 19-20, 637, 651, 696). Other examinations from the same period, including some of Dr. Hausrath's treatment notes, depict Plaintiff with normal spinal range of motion and the ability to walk with a normal gait without assistance. (T. 697, 877, 888, 908-09,

911.)  Although Plaintiff reported diffuse joint pain in his ankles, hips, knees, shoulders, and right hand during his consultative examination with Dr. Wassef, he rarely reported any joint issues to his treating providers, and typically demonstrated full strength and range of motion in the upper and lower extremities.  (T. 695, 697, 901, 909.)

The ALJ recognized the one consistent theme throughout Plaintiff's medical history is a concern from his treatment sources of embellished or exaggerated physical symptoms.  (T. 19.) In Dr. Hausrath's September 10, 2018, treatment notes, the physician described Plaintiff as being "VERY dramatic" with "moaning, groan, a lot of heavy breathing and his exam is VERY embellished with almost any movement that I perform."  (T. 910 (emphasis in original).)  During a May 2017 psychiatric evaluation, Dr. Bruce Kokernot described Plaintiff as "us[ing] his high intelligence to paint an exaggerated picture of his victimhood," including "walking with an exaggerated gait and a cane."  (T. 669-70.)  Despite his reported pain, Plaintiff frequently refused or delayed recommended treatment such as physical therapy, non-narcotic pain medication, and steroid injections.  (T. 430-31, 436, 734-35, 738.)  Although Plaintiff reported narcotic pain medication had been more effective for his pain, multiple treatment providers denied his requests after he tested negative for several prescribed narcotics and tested positive for one which had not been prescribed.  (T. 651, 738, 767-68.)

The ALJ also considered these physician concerns about Plaintiff's reliability when evaluating Plaintiff's hearing testimony.  (T. 18, 22.)  Plaintiff testified he could sit for no more than twenty minutes before needing to change positions and could only stand for five to ten minutes before experiencing pain, with a need to sit down after standing for twenty minutes.  (T. 50.)  He estimated he could only walk for ten or twenty minutes before needing a break.  (T. 51.) The ALJ contrasted this testimony with Plaintiff's activities of daily living, and found them

suggestive of greater physical abilities.  (T. 22.)  These included taking care of his cat, preparing simple meals, sweeping, shopping "during off hours," watching hockey, using the internet to follow hockey news and email friends, and playing video games.  (T. 18, 54-56, 202-06, 703.)  Plaintiff also testified he did "about two to four hours worth of reading every morning when I get up."  (T. 55.)  The ALJ is entitled to consider Plaintiff's daily activities in this manner.  *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (allowing ALJ to consider daily activities in determining consistency with alleged symptoms); *Herrington v. Berryhill,* No. 3:18-CV-315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (activities of daily living are appropriate factors for an ALJ to consider when assessing a plaintiff's claimed symptoms and limitations).

Taking all these factors into account, the ALJ marshaled substantial evidence to find the consulting physician opinions more persuasive than Dr. Hausrath's opinion, despite Dr. Hausrath' eight-month treatment relationship with Plaintiff.  "[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."  *Gamble v. Comm'r of Soc. Sec.*, No. 1:15-CV-0352 (GTS/WBC), 2016 WL 4491710, at *5 (N.D.N.Y. July 25, 2016) (quoting *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010)), *report-recommendation adopted by* 2016 WL 4487780 (N.D.N.Y. Aug. 25, 2016); *see also Jacqueline L. v. Comm'r of Soc. Sec.*, No. 6:19-CV-6786, 2021 WL 243099, at *6 (W.D.N.Y. Jan. 26, 2021) ("[T]he new regulations eliminate the 'treating physician rule,' and the opinion of a consultative examiner may override the opinion of a treating physician, particularly where the opinion of the consultative examiner is better supported by the record.").

In addition to the request for general deference to Dr. Hausrath's opinion, Plaintiff makes

a more specific challenge to the ALJ's evaluation of Plaintiff's physical functional limitations. (Dkt. No. 16 at 34-35.)  Based upon the longitudinal record, the ALJ's RFC determination limited Plaintiff to "occasional" stooping.  (T. 17.)  In determining Plaintiff was capable of occasional stooping, the ALJ expressly rejected Dr. Hausrath's opinion Plaintiff could "never" stoop or bend, citing the documented observation of Plaintiff rising from a chair without difficulty.  (T. 19, 696, 1042.)  Plaintiff contends this solitary observation fails to contradict Dr. Hausrath's finding, and is insufficient as a matter of law.

It is well established "[i]f a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." *Cherry v. Comm'r of Soc. Sec.*, 813 F. App'x 658, 662 (2d Circ. 2020) (citing SSR 85-15, *Titles II and XVI: Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments*, 1985 WL 56857, at *7 (SSA 1985)).  "Stooping" is generally defined as "bending forward and downward at the same time, while sometimes also bending at the knees."  *Natasha D. v. Comm'r of Soc. Sec.*, 3:19-CV-515 (ATB), 2020 WL 1862966, at *9 (N.D.N.Y. Apr. 13, 2020) (citation and emphasis omitted).  Plaintiff has not articulated why it was unreasonable for the ALJ to compare the ability to rise from a seated position with the bodily movements normally associated with stooping.  Moreover, when read in the context of the other medical evidence relied on by the ALJ in the RFC determination showing full strength in Plaintiff's upper and lower extremities and full range of motion in the knees, along with the conflicting evidence regarding the scope of the limitations associated with Plaintiff's spinal impairments, this Court is able to glean the rationale behind the example cited by the ALJ and finds it supported by substantial evidence.

In addition, any error regarding Plaintiff's ability to stoop would be harmless in this case.

As Defendant points out, the VE identified three representative jobs Plaintiff is capable of performing, and none require stooping.  (T. 68.)  *See* Dictionary of Occupational Titles ("DOT") § 249.587-018 (Document Preparer), 1991 WL 672349; DOT § 713.687-018 (Final Assembler), 1991 WL 679271; DOT § 685.687-014 (Cuff Folder), 1991 WL 678284.  Therefore, any error in including "occasional stooping" as part of the RFC determination would not change the ultimate disability determination.  *Akey v. Astrue*, 467 F. App'x 15, 17 (2d Cir. 2012) (ALJ's failure to include limitations in hypothetical questions posed to VE was harmless because the only jobs the VE identified accommodated those same limitations); *Danielle Y. v. Saul*, No. 8:19-CV-599 (MAD), 2020 WL 1862968, at *8 (N.D.N.Y. Apr. 14, 2020) (even if the ALJ erred by omitting certain postural limitations from the RFC, such error was harmless because the jobs identified by VE and relied upon by the ALJ did not require those postural activities).

 2.     **The ALJ'S RFC Properly Considered Plaintiff's Mental Health Functional Limitations.**

In evaluating the functional limitations associated with Plaintiff's mental impairments, the ALJ found the opinions of consultative psychiatric examiner Dr. Brett Hartman and state agency psychiatric consultant Dr. Michelle Marks to be persuasive. (T. 21-22.)

Dr. Hartman examined Plaintiff in July 2017.  (T. 21, 700-05.)  Prior to the examination, Plaintiff described a lengthy history of mental health treatment, dating back to his childhood.  (T. 700.)  This description is consistent with documentation in the administrative record pre-dating the amended alleged onset date.  (T. 362-377.)  He reportedly ceased treatment for several years due to a concern about overmedication.  (T. 700)  At the time of the examination, Plaintiff had been participating in biweekly mental health counseling for the previous five months and was not on any psychotropic medication.  (T. 21, 700.)

During the examination, Plaintiff appeared "cooperative, yet restless and somewhat agitated," with poor eye contact.  (T. 702.)  Dr. Hartman opined Plaintiff's attention and concentration were generally intact, with coherent and goal-directed thought processes.  (T. 702.)  His recent and remote memory skills were also intact, and his "intellectual functional appear[ed] to be above the average range with a higher than average general fund of information."  (T. 703.)

Based on his examination, Dr. Hartman opined Plaintiff is able to understand, remember, and apply simple directions, and has a "fair" ability to understand, remember, and apply complex directions.  (T. 703.)  He further opined Plaintiff has a "fair" ability to sustain concentration and to maintain awareness of normal hazards, with "mild" difficulty sustaining an ordinary routine.  (T. 703-04.)  In Dr. Hartman's opinion, Plaintiff has "mild to moderate" difficulty using reason and judgment, "moderate" difficulty interacting adequately with others, and "moderate" difficulty regulating his emotions and controlling behavior.  (T. 704.)  Dr. Hartman recommended Plaintiff continue with mental health counseling, and opined he may also benefit from a drug and alcohol treatment program, given his reported history of prior substance abuse.[7]  (T. 704.)

Dr. Marks reviewed Plaintiff's mental health records in August 2017.  (T. 87-90.)  She opined Plaintiff is able to understand and remember simple and detailed instructions and work procedures and is able to maintain adequate attention to complete ordinary work tasks on an ongoing basis and sustain a normal workday and workweek.  (T. 89-90.)  With regard to social interaction, Dr. Marks opined Plaintiff would benefit from a work setting with limited contact with co-workers and the public but is capable of engaging in basic interactions to meet work-

---

[7]  There is no evidence in the record of current substance abuse.

related needs.  (T. 90.)  She further opined Plaintiff has some difficulty coping in stressful circumstances but has no substantial limitations in his ability to adapt to customary changes in an ordinary work environment.  (T. 90.)

The ALJ also considered the February 19, 2019, Mental RFC Assessment prepared by Dr. Hausrath.  (T. 1045-50.)  Dr. Hausrath opined Plaintiff has no limitations with regard to remembering locations and work-like procedures, and can understand, remember, and carry out very short and simple instructions.  (T. 1047.)  He further opined Plaintiff has "mild" limitations in his ability to make simple work-related decisions, and moderate limitations in his ability to ask simple questions or request assistance.  (T. 1048.)  Dr. Hausrath opined Plaintiff has "marked" limitations in his ability to accept instruction and respond appropriately to criticism from supervisors.  (T. 1048.)  In Dr. Hausrath's opinion, Plaintiff's mental impairments would cause him to be off task at least twenty percent of the workday.  (T. 1049.)

The ALJ found Dr. Hausrath's mental health opinion unpersuasive because it was inconsistent with either consultative opinion as well as the available psychiatric records.  (T. 19, 22.)  Considering the record as a whole, the ALJ cited Dr. Kokernot's cautionary note about Plaintiff's "exaggerated" behavior "meant to solicit a rescuer," and his recommendation against prescribing psychotropic medication.  (T. 670.)  The ALJ also noted the lengthy gap between Plaintiff's alleged onset date and his return to psychiatric counseling, and the documented, if slight, improvement after re-starting treatment.  (T. 21, 888.)  Initial treatment notes from Dr. Dino Santoro, who first saw Plaintiff on October 18, 2018, recommended outpatient therapy to address "relatively mild interference with interpersonal/occupational functioning."  (T. 886.)  At Plaintiff's next appointment on November 13, 2018, Plaintiff reported little change in his symptoms, but Dr. Santoro observed "a slight apparent response to treatment" despite a

depressed and unhappy appearance.  (T. 888.)  He described Plaintiff as cooperative, with logical

thought patterns and fair insight into his problems.  (T. 888.)  Dr. Santoro observed no signs of

anxiety and again concluded Plaintiff was impaired "to the degree that there is relatively mild

interference with interpersonal/occupational functioning."  (T. 888-89.)  Dr. Hausrath's opinion

does not identify any evidence to support his more restrictive opinion, and Plaintiff has not

identified any in the broader medical record.  Therefore, the ALJ's evaluation of the psychiatric

opinion evidence is supported by substantial evidence.

Plaintiff contends the ALJ's focus on his diagnosed depression and anxiety failed to

properly account for other mental impairments, including personality disorder, impulse-control

disorder, and somatoform/factitious disorder at step two and step four of the sequential

evaluation process.  (Dkt. No. 16 at 27-31.)  Plaintiff's treatment providers and the consultative

examiner did reference these impairments, although some fell short of a formal diagnosis.  (T.

670, 704, 885.)  More crucially, Plaintiff has not identified any functional limitations resulting

from these impairments or associated treatment unaddressed in the ALJ's RFC.

Accordingly, this Court finds no error at steps two or four with regard to these

impairments.  The "mere presence of a disease or impairment, or establishing that a person has

been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a

condition severe." *Tammy C.-J. v. Comm'r of Soc. Sec.*, 523 F. Supp. 3d 368, 374 (W.D.N.Y.

Feb. 26, 2021) (internal citation and quotation marks omitted).  Therefore, Plaintiff failed to

identify any evidence to support his assertion of an erroneous step two analysis.  *Smith v.*

*Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 277 (W.D.N.Y. 2018) (plaintiff offered "very little

argument" to support his contention of specific severe physical and mental impairments).

Likewise, the record indicates the ALJ considered evidence of all of Plaintiff's mental

impairments, regardless of a specific diagnosis, as part of the RFC determination.  *See Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015) ("Rivera argues this conclusion is not supported by the record, as he was diagnosed with both anxiety and PTSD.  However, even assuming the ALJ erred at step two, this error was harmless, as the ALJ considered both Rivera's severe and non-severe impairments as he worked through the later steps."); *Morales v. Comm'r of Soc. Sec.*, No. 10-CIV-8773, 2012 WL 124554, at *17-18 (S.D.N.Y. Jan. 17, 2012) (finding no legal error where ALJ did not specifically mention psychosomatic symptoms but discussed relevant medical opinions at length).

Plaintiff further contends the ALJ should have considered whether any embellishment of his symptoms stems from a psychosomatic impairment.  While some of Plaintiff's examiners did raise concerns about a psychosomatic component to Plaintiff's physical symptoms, none reached a definitive conclusion.  (T. 670, 704, 1000.)  Almost all equally considered whether Plaintiff's exaggerated symptoms were an attempt to obtain narcotic medication for abuse or sale, in light of Plaintiff's prior treatment for substance abuse, inconsistent drug test results, and admission during Dr. Kokernot's psychiatric evaluation of a former career as "a very successful drug pusher and criminal."  (T. 454, 472, 475, 651, 669, 738, 767-68.)  The ALJ discussed these concerns in his decision, particularly when evaluating the reliability of Plaintiff's testimony.  (T. 19.)

Thus, Plaintiff's challenge regarding the ALJ's mental RFC determination is premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about Plaintiff's functional limitations and the potential exaggeration of his symptoms.  This Court will not reweigh the evidence presented to the ALJ.  *See Warren v. Comm'r of Soc.* Sec., No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the

substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled.  [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).  Accordingly, the Court finds the ALJ's RFC determination, with regard to Plaintiff's combined physical and mental impairments, is supported by substantial evidence.

**B.**　　**The ALJ's Step Five Determination is Supported by Substantial Evidence.**

The burden shifts to the Commissioner at step five "to show there is other work that [the claimant] can perform."  *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert."  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question incorporating the plaintiff's limitations.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).  Where the hypothetical is based on an ALJ's RFC analysis which is

supported by substantial facts, the hypothetical is proper.  *Id*. at 276-77.

In this case, a VE testified at Plaintiff's administrative hearing.  (T. 66-71.)  Because this Court has found the ALJ's RFC determination is supported by substantial evidence, it also finds the ALJ's hypothetical to the VE was proper, and his step five determination is supported by substantial evidence.

## VI.      CONCLUSION

Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination Plaintiff was not under a disability within the meaning of the Social Security Act.  20 C.F.R. § 404.1520(g).

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**.


Dated: March 16, 2022
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

27